is going to be participating virtually. So we'll call the case of United States versus Little John Connor. Um, and this is 21 12 24. We'll hear from Mr. Good morning, Your Honors. My name is Josh Lee, and I represent the appellate Ryan Little John Connor. Mr. Little John Connor is asking the court to vacate and remand for resentencing because the district court committed two errors that render his sentence procedurally unreasonable. The first of these is that the district court ruled that it could not grant Mr Little John a reduced sentence based on the family impact that Mr Little John presented in mitigation. Uh, the second of these issues is that the only was that the only basis for the denial of downward departure? Um, no, Your Honor. The   Mr Little John did put a number of different circumstances into his sentencing decision, but he never said that any other 35 53 a factor was an independent basis for denying a downward variance. So the judge never said if I had taken the family impact into account, I nevertheless would still deny a downward variance. And so, uh, we need to say that when he relies on a number of things in his sentencing. So sentencing is trying to make this case look like Vargas, and it is not. Um, so sentencing is always a multifactorial judgment. So the district judge always puts a number of mitigating factors on the scale and a number of aggravating factors on the scale. But that does not mean that that does not mean that any factor is the sole basis for the sentence. And it on the scale, then you may have had a different outcome. There's a reasonable likelihood of a different sentence. And, you know, doesn't the sentencing transcript tell us that the district court did consider family circumstances along with many other considerations that are appropriate in completely off the table. And what the judge said, and I'm reading from page 65 of the third volume of the record on appeal is, as I said many times, I can't sentence him differently because he's got a beautiful family that needs his support. I can't do better for him than I do for someone who commits the very same crime that doesn't have the same family issues. So the district judge is you have asked me for a reduced sentence based on the family impacts of incarceration, and I can't do that. He said that he can't do it twice. And to say that you can't do something didn't didn't didn't he seek didn't his counsel seek downward departure for many reasons. That is, he had he had proved himself. He'd gotten a job. He's been sort of responsible in his life. He's turned away from gang membership. All of these things were also considered. Were they not? All these all these things are positive. I don't think that the judge entirely refused to consider any and all mitigating factors in his sentencing decision. What the judge did do is he refused to consider one of the important mitigating factors. And it was certainly the family circumstances and family impact were certainly one of the main reasons that Mr Little John presented for a downward variance. Um, and I think, you know, not only did the judge say twice, I can't do this. Um, he said, as I said many times before, so he's he's saying I have a policy or categorically, I don't believe that I can consider these family impacts. Um, and let me ask you, go ahead. Sorry. Oh, no, please. Go ahead. I want you to finish your answer. I thought I was. I think I think I think I was finished answering Judge Briscoe's question. Okay, there was an illusion of Vargas. And I have one question because the government made one argument in your case that was not made in Vargas. And I want to ask you about it. It's guideline five H 1.6 35 53 a you argue, and I think correctly that history and characteristics under Munoz does include family ties. Okay. And so you argue that that is one of the implicitly one of the 35 53 a factors in 35 53 a doesn't say that you have to consider these with regard to whether to vary or not. So you have to decide you consider these in connection with a particular sentence. For example, if you have a 51 to 62 month guideline range, you have to consider all of these factors, including family ties. Now, here, the judge imposed a sentence at the floor of the guideline range. So the only question was whether to vary downward from the guideline range based on this implicit factor under 35 53 under Munoz. Granted, family ties five H 1.6 in connection with departures says that that is disfavored. You are ordinarily not to consider for a downward, uh, for any departure, um, family ties and responsibilities. And that was departures rather than, uh, variances. But we have several unpublished opinions saying, You know, I can't imagine why that would be disfavored for a departure, but it would not be disfavored for a variance. Can you think of any reasons that it would be disfavored for a departure but not for a variance? Um, well, first of all, this court's case law indicates that it's not a disfavored reason for a variance. Um, so, uh, Barnes, Syed and Munoz Nava. They're the three cases that I saw Burns or Barnes. That was my opinion, and I was dissenting in Barnes. Judge Tempkiewicz is majority opinion upheld the sentence and was and I don't think there was any discussion. I could could be wrong, but I know that the site the passage that I think both sites sites excited in Barnes have been graded. That's what I thought. But you know, that was just one person's opinion, not majority. But Munoz, I don't know that they discussed 35 55 age 1.6. Did they? Um, I think that they have not discussed this specific issue. Um, my recollection of Barnes just to interject is that it was a government appeal from a downward variance. And one of the things that Judge Tempkiewicz said is you have five dependent Children, and that is a pretty good reason why you might not deserve a guideline sentence. That's pretty on point with what I have here, which we have four dependent Children. But going back to the guidelines departure, um, there is commentary to that guideline as well as commentary to the compassionate release guideline that says yes, but family impact sometimes is a valid reason for a downward variance. And what you have here is the district court saying categorically, I am not allowed to do this. If the district court had said, well, um, ordinarily, this is not a great reason for a variance. And I have looked at the facts of this case, and the family impacts are not extraordinary. Then we wouldn't be here. Um, the reason that we are here didn't say that he wouldn't consider family ties and responsibilities into deciding under 35 free a particular sentence in deciding between 51 and 62 months. He was just saying, I'm not gonna very downward. And that seems to be a different a different kettle of fish. I don't know that that there's any even, uh, so yet Barnes Munoz. I don't know that any of cases have said that you you have to consider these these these aspects of 35 53 that are disfavored as a as a departure. You have to consider those not only in deciding within a particular guideline range, but also in deciding whether to bury. This is an issue about the judge not understanding the scope of his authority. So what Barnes, Syed and Munoz say is that you can very downward based on family impact. And this judge says I can't very downward based on family impact. You're saying then that you just said that this is a case where the judge did not understand his sentencing authority. Yes. So that that is a procedural challenge. Yes. And did and did you? And did you object when the court is going on and on about the things that will consider or not consider? Um, we did not object after the district court announced his sentence. I don't think that we were required to do that under federal rule of criminal procedure. 51. What we did is we moved the district court for a downward variance based on family circumstances and family impact and cited 35 53 a and said this is a downward variance or a downward departure. It's a downward variance. We move for a downward variance and then to go below below the below the bottom of the range, right? That's what you're trying to do. Yes, your honor. That's right. And so we asked the district court for that. Um, and rule 51 says that what we need to do to preserve an error is inform the district court when the ruling is sought of the action that you want the district court to take. And that's what we did. We informed the district judge when we sought the downward variance that we wanted the district judge to very downwards based on family circumstances. Then under rule 51 a we were not then required to take an exception when the district judge refused to grant the relief we requested. What case do you rely on for that? Um, uh, both Lopez Avila and Vargas Ortega. Uh, that being said, I don't think that you have to reach the preservation issue. And that's for two reasons. First, because the government has not presented any argument on the 2nd, 3rd or 4th prongs of plain error review. So I think it's wave that. But the second one is that we can satisfy the requirements of plain error review. It's clear that the judge said, I can't do this. Um, this is not a valid basis for a downward variance. And this court's case law is clear that he can do. Did the court did the court consider other things? And did counsel ask the court to consider other things besides family circumstances? Yes, that's correct. Our claim is not our claim is not that Mr Little John presented only family impact as a basis for a downward variance. And it is not that the district. So how would the district court know? And how should we accept under Rule 51? There's no need for an objection if there was a whole slew of reasons for the downward variance because family impact was a major reason for the downward variance. And the district court fully understood that this is a situation where the district court knew that this was a major reason for a downward variance because he specifically addressed it. You know, he indicated, I know you're asking me for a downward variance based on this, but I can't do it. As I've you have any obligation to show that it made a difference? Um, I don't think that I do because the government has not argued harmless error. Um, but nevertheless, I think that I can. Um, you know, the, uh, even the prosecutor said the family circumstances that we've got here are rare. Um, and that a sentence of incarceration is going to have a quote horrible impact on these kids. So this was a significant mitigating factor, and it stands to reason that if you throw that into the 35 53 a mix, there's at least a reasonable probability that the outcome would have been different. I'd like to reserve the remainder of my time for rebuttal. If the court would let me sure. Paul, could you stop the clock? Do you have any questions? Judge McHugh? Okay, thank you. We'll hear from Mr Britain. Okay. Thank you, Your Honor. May it please the court. Kyle Brenton for the United States. Mr Little John Connor asks this court to reverse his sentence based on two claimed misinterpretations of Section 35 53 a by the district court, both reviewable in this court on appeal only for plain error. But the transcript reveals that the court did not actually hold either of the claimed misinterpretations of Section 35 53 a and even if it had Mr Little John Connor cannot show plain error as to either point, and his sentence should thus be affirmed. I'd like to begin with the question of the proper standard of review of the family circumstances argument. Um, as Judge Briscoe's questions pointed out, um, no council below objected to the statements that the court made regarding the relevance of family circumstances. Um, I think, as I'll discuss in a moment, I think the court was not actually saying what Mr Little John Connor claims on appeal that it was saying. And I think that probably explains why no one objected. But at any rate, no one did object. And so this court is left in the position of attempting to read the district court's mind. This would not have been a difficult objection to make as the court pronounced sentence. When it said what Mr Lee has quoted, Mr Little John Connor's counsel could simply have said, Your Honor, is the court suggesting that family circumstances can never be relevant under 35 53 a 10 seconds would have obviated the need for this appeal altogether. And under those circumstances, I think the court absolutely should apply the plain error standard of review. But when when he argued, he argued pretty forcefully for consideration of family circumstances. So the court was aware the issue was before it. And in fact, the court specifically said, I can't sentence him differently because he's got a beautiful family that needs his support. I can't do better for him than for someone else that commits the very same crime that doesn't have the same family issues. I mean, looks to me like it was clearly before the court, the court understood it was before it and it ruled on it. And I think we have case law that says that there was no obligation to then make us after the court refused to consider it, saying you need to consider it. Well, I think Your Honor is correct that certainly the question of Mr Little John Connor's family circumstances was absolutely before the court. I mean, there's there are very lengthy statements from four of his sisters, his half sisters, a statement from Mr Little John Connor himself and linked the argument from his counsel about why his family circumstances should justify a downward variance. But that's not the question before this court. In this argument, the legal argument on appeal is the legal question of whether family circumstances are relevant to the 35 53 a factors. That's a different  variance that and and that is where I think this case is different from Lopez Avila and from Vargas Ortega. Um, but I want to take it. The question was actually about a downward variance. Yes, absolutely, Your Honor. That's absolutely correct. Vargas Ortega has a lot in common with this case. But I think where this case departs from Vargas Ortega is in the clarity with which the district court in that case rejected the family circumstances argument. And I'd like to, you know, we've been a language from both transcripts is very close in Vargas Ortega. Um, the court says it's not a factor. I can't consider it. And then we have I can't consider it. It's it's it's I can't sentence him differently due to family circumstances. I mean, I'm having trouble seeing the daylight between the records in the two cases. Well, respectfully, Judge McHugh, I think that the key passage in the sentencing transcript is actually not on page 65, which is where the I can't help him language comes from. But in fact, earlier on page 60 and this this quotation does not get a lot of play in the briefs. But I think it's very important because there the court is discussing the motion for a downward variance. And what the court says is that the motion for a variance was, quote, grounded in some valid points, close quote, concerning his family circumstances, among other things. And again, quote, could justify a variance. But in this case, they don't justify in my mind downward variance for the reasons I would get into. And again, that's on page 61 of the sentencing transcript. And at that point, then the court explains all the reasons why it did not feel that a downward variance was appropriate in this case. So I think that the court in reviewing has to has to read those two quotations together. The quote the court is the sentencing court is saying these things, including family circumstances, could justify a variance, but they don't in this case. And that is entirely in line with this court's precedence regarding the relevance of family circumstances and 35 53, which is it is only the very rare case where family circumstances are going to justify either a downward departure, as as Judge Bacarach noted that that's disfavored or a downward variance. But that's a very rare case where that can happen. But it can happen under those rare circumstances. But this case did not present those from Vargas Ortega, because in Vargas Ortega, what the court is saying, I do not consider his family circumstances dot dot dot because it's not a factor or objective under 18 U. S. C. Section 35 53. What the court in this case is saying is that his motion for a variance based on his family circumstances could justify a variance. But in this case, they don't justify in my mind the downward variance. So I think that on the facts Vargas Ortega and this case are our night and day difference. And to be clear, we keep slipping back and forth between variance and departure. Yes, Your Honor. This is a case about a variance. Absolutely. Um, and and it's and it's a bit confusing because in the record, there was also at sentencing the question of whether the court would, um, grant the would adopt the four level increase for use of a firearm in connection with another felony. And, um, what council for Mr Little John Connard indicated was that he was gonna seek a sentence of 57 months. That would have been the bottom of the guideline without the four level increase. But even with the four level increase, he wanted a variance down to 57 months. So this is absolutely a variance case, Your Honor. Um, so I think that that's that ultimately the difference between the other between Vargas Ortega in this case is in the clarity with which the in Vargas Ortega articulated the legal position that family circumstances are not relevant to 35 53. That simply didn't happen here. And I think on a plain error standard, the court cannot look at this transcript and find that the district court plainly rejected that family circumstances can ever be relevant under 35 53. Um, now I know that, uh, Mr that council for Mr Little John Conner did not reach the second issue about nationwide disparities on and the Colbert case. I'm happy to address that. Um, please. So on this point, there's no dispute that the plain error standard review applies again. There was no objection. And I think that, um, he cannot carry his burden of showing all four elements of plain error on this argument. It is there, though, is it not? You have to have national uniformity. You don't just look to see what's happening in a specific district or specific judge. Well, Your Honor, I think that's again. We're in the territory of reading what was in Judge Jackson's mind here, because there's nowhere in this transcript where Judge Jackson rejects the proposition that 30 that 35 53 a six requires him to look at national nation nationwide disparities. He Yeah. In what sense, Your Honor? Well, that's not Mr Lee's argument. His argument is that the judge also thought mistakenly that 35 53 a six requires not only to consider national disparities, but he that that statute also not that just permits but requires the judge to go back into his files and see. Okay, well, what did I sentence? You know somebody else for a similar offense two years ago, three years ago, four years ago, not even co defendants, but go back in his files and and and make sure that he has been internally consistent. And as Mr Lee argues, well, maybe Colbert was wrong, but but but the judges clearly erroneous view is that he has to perpetuate his practice for as long as he, you know, retains his article three status. And that clearly, as you point out, is not what is called upon in discussing national, uh, to avoid unwarranted disparities nationwide under 35 53 a six. And the judge specifically said, not only do I should I do this, but I have to. I have to go back and look at the Colbert case, and that's clearly wrong, isn't it? Well, Your Honor, I would say in response a couple of points. I think, first of all, the 53 a six specifically, I don't think I think the court referred generally to the principles of proportionality, requiring him to look to similar cases that he has had. But I don't know. And particularly where we're talking about plane error, where he has not articulated a specific and and express interpretation of the statute. Whether this court confined, let me let me rephrase. Do you question that the judge said expressly that he had to consider Colbert? No, I don't question that. I do not. And I think you question it. I don't think you're gonna question this based on your response brief that that was an obvious error for prong to a plane error. He might have been able to do that, arguably, but he certainly didn't have to. Well, and I think that latter point is important because there's no argument in this appeal that it was per se improper for the court to compare this case to the Colbert case. Well, no, absolutely. But I think that once you once you take that point off the table, you have to look very carefully at exactly what the court here was saying with regard to what does 35 53 a six allow or permit or require? And I think what I think is significant for this court's review of this point, though, are the third and fourth prongs because I think that, um, the court made clear again and again and again in this sentencing that it believed that Mr Little John Connors behavior was extremely serious and extremely dangerous based not on a comparison to Colbert, but based just on the behavior itself. And do you question for purposes of prong three that the judge did allow his thinking to be influenced to a material degree by the fact that this is not Colbert, but it's not that far from that his thinking about Colbert contributed to his decision to impose this particular 235 month sentence? Well, I think your honor, the question is not, um, did it influence his thinking to a material degree? I think it's whether Mr Little John Connor can show a reasonable probability that he would have been given a below guidelines sentence in the absence of Colbert. And I don't think that this court can answer that question. Yes. And I think for a couple of reasons, I think first, if you look at the transcript, it's clear that Colbert was not just exerting an upward pressure on the on the, um, on the sentence, because when the government asked made its argument for 105 month sentence, what the district court said on page 56 of the sentencing transcript was, Well, that's only 15 months less than Colbert. I think that's too much. So you can see right there that Colbert is not just pointing the district court one way. It's also pointing the district court in the opposite direction. So I think that this court cannot say with certainty that in the absence of Colbert, the court would have varied below the guidelines. I also think that's abundantly clear from everything that the court said about just this case about Mr. Little John Connors, history of gang involvement about the seriousness of the offense about the bullet found in the bathroom mirror of a neighbor that the amount of public danger that was present here about Mr. Little John Connors, domestic abuse incidents with his wife and their newborn child. That was just a year before the offense conduct here. It is. It is abundantly clear from review of this transcript that the district court was not going to very below the guidelines Colbert or no. So I do not think that the court can say there is a reasonable probability he would have gotten a below guidelines sentence absent Colbert. Also, I think just to go back to the question of nationwide disparities, this is a within guidelines sentence. This is, in fact, a bottom of the guidelines. Consideration of nationwide disparities is automatically baked into a has any very concrete. You're saying that? Well, he did consider the appropriate factor. 35 53 86. He did consider unwarranted national disparities again. That's not his argument. Mr Lee saying what he also argued was that there's this other factor that is not compelled. That is not does not fall within the rubric of 35 53 86 is internal practice in the past. And so even if he considered lots of appropriate things, what a bad guy he was, etcetera, he still didn't. He's still mistakenly thought that he had to consider what he did in Colbert. And I don't understand how his use of the something that he considered that was appropriate under 35 53 has any bearing on whether or not it affected the defendant's substantial rights for the judge mistakenly to think that he had also consider his internal practices as a required factor when even you agree that it clearly was. I see I'm out of time, Your Honor. May I may respond? Sure. I think that the quite the fact that this is a within guidelines sentence, the bottom of the guidelines sentence is particularly relevant, I would say, to the fourth prong of plain error review. I think that, you know, if the overarching question is, has the judge, you know, misapplied the 35 53 a in terms of nationwide disparities that that obviously has not happened in this case because it is a within guidelines sentence. So I think that I think that is particularly relevant to come for. Um, and if there are no other questions, the government would ask that the sentence be affirmed. Judge BQ. Do you have any questions now? Okay, well, thank you. Thank you. Thank you, Counsel. Um, this was well presented in your briefs and in your arguments. Um, and, uh, he's got, Oh, sorry. Uh, I've had a practice. Mr Lee, you may be. Yes, Your Honor. I'll be very brief. I wanna discuss the third prong of the Colbert issue really briefly. The government. I think I wrote this down correctly conceded that the Colbert sentence affected the district courts thinking to a substantial degree. And given that, I don't think it's possible to say with confidence that this result would have been the same had the judge not committed this error. Um, uh, and, uh, you know, there are all of these other aggravating factors, but it was these other aggravating factors plus the Colbert sentence that led to an 84 month sentence. And if you had taken this Colbert sentence, which favored a longer sentence off the table, it's at least reasonably probable the result would have been different. Thank you, Your Honor. Uh, may I ask the chief of the panel if I could ask a question? Um, the Colbert sentence was 120 months. I think it was the maximum. And here it's 84 months, which is some 36 months less. Um, quite a big difference. I think a 30% difference from the sentence that Colbert decision. It doesn't appear that it really was tied much to that sentence and in fact gave, um, the lowest sense it could give within the guidelines here. Um, I don't think that's a correct reading of the record when the when the district court is addressing the defense's motion for downward variance. What the judge said is, okay, this may not be as bad as in other words, he's saying, I just can't go as far down from the Colbert sentence as you're wanting me to go. And so in that respect, and he does, but he gives a whole lot of reasons for why he can't go any lower than he goes. And it's not just that I need to be within line with Colbert. So, um, I guess I have some of the same questions that Judge Briscoe raised earlier is how do we deal with the fact that this testimony about family circumstances, some of it's given by a woman who he very recently physically assaulted the judge to consider those kinds of things, right? The judge did. But the problem is, if you remove factors from the mitigation side of the scale and add factors to the aggravation side of the scale, you're going to skew the factors. And when you look at these two errors in tandem, I think that's when it becomes really clear that there's at least a reasonable likelihood of a different sentence. Thank you. Okay. Thank you. This matter will be submitted. Court is in recess until nine o'clock tomorrow morning. Yeah. Yeah.